UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST E. MOTLEY,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>SHAWN HATTON,<br><br>　　　　　Respondents. | No. 2: 16-cv-0059 MCE KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

　　　　Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 conviction for multiple offenses, described herein. Petitioner is serving a sentence of 15 years.

　　　　For the reasons stated herein, the undersigned recommends that the petition be denied.

II. Procedural Background

　　　　This action proceeds on the original petition. (ECF No. 1.) The original petition raises five claims: 1) denial of right to confront accuser; 2) violation of Brady v. Maryland, 373 U.S. 83 (1963); 3) violation of Napue v. Illinois, 360 U.S. 264 (1959); 4); state court erred in denying claims two and three; and 5) ineffective assistance of counsel.

　　　　On May 16, 2016, respondent filed a motion to dismiss claim four for failing to state a federal claim. (ECF No. 10). Respondent moved to dismiss all claims as barred by the statute of

limitations. (Id.) On June 1, 2017, the Honorable Morrison C. England granted in part and denied in part respondent's motion to dismiss. (ECF No. 31.) Judge England dismissed claims one and five as barred by the statute of limitations. (Id.) Judge England found that claims two, three and four were not barred by the statute of limitations. (Id.) Judge England also found that claim four was further briefing in support of claims two and three. (Id.; ECF No. 25.)

III. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit

precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (*per curiam*)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was "erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

3

court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine

4

whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

IV. Background

The California Court of Appeal summarized the charges against petitioner and the factual background of these charges. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein.

> The Charges
>
> By amended information, the prosecution charged defendant with 10 counts; the first two were committed on September 15, 2009, and the remainder were committed on September 22, 2009. The section 654 issues presented here relate to Count Three, first degree burglary, which occurred on September 22, but there is evidentiary support for

5

one of defendant's criminal objectives on that day in the events of September 15.

September 15, 2009 Charges

Count One—corporal injury on a co-parent, Vanity Doe (§ 273.5, subd. (a)), and

Count Two—felony child abuse (§ 273a).

September 22, 2009 Charges

Count Three—first degree burglary (residential) (§ 459);

Count Four—first degree robbery (residential) of keys, a helmet and a backpack from Calvin Lynn (§ 211);

Count Five—assault with a firearm on Calvin Lynn (§ 245, subd. (a)(2)), with an allegation of personal use of a firearm (§ 12022.5, subds.(a), (d));

Count Six—assault by means of force likely to produce great bodily injury on Calvin Lynn (§ 245, subd. (a)(1));

Count Seven—corporal injury of a co-parent, Vanity Doe (§ 273.5, subd. (a)), with allegations of personal infliction of great bodily injury under domestic violence circumstances (§ 12022.7, subd. (e)), and personal use of a firearm (§ 12022.5, subds.(a), (d));

Count Eight—assault with a firearm on Vanity Doe (§ 245, subd. (a)(2)), with an allegation of personal use of a firearm (§ 12022.5, subds.(a), (d));

Count Nine—felon in possession of ammunition (former § 12316, subd. (b)); and

Count Ten—felon in possession of a firearm (former § 12021, subd. (a)).

The September 15, 2009 Incident

On the night of September 15, 2009, defendant went to visit his six-year-old daughter and pick up his mail. The child's mother, Vanity, no longer allowed defendant in her apartment, which was leased under her name. She gave defendant his mail and defendant visited with their daughter outside. Vanity indicated that their daughter needed to go to bed and the child came back inside. Defendant called for the child to come back outside. Around that time, Vanity received a telephone call from a male friend and she answered it within earshot of defendant. Defendant pushed his way into the apartment and went directly to their daughter's room. Vanity tried to stop him from entering the child's bedroom. Defendant grabbed Vanity by the neck and threw her into the closet. Defendant then "snatched" the child from the arms of a friend who was visiting Vanity, which caused the child to cry. Vanity was "grabbing at [defendant]" in an attempt to

6

get the child back. As defendant was leaving the apartment with the child, he swung around, trying to keep Vanity away from her, and the child's head struck the front door. The child sustained a knot and a cut on the back of her head. Defendant left with their daughter, but later had a friend return the child.

The September 22, 2009 Incident

Early in the morning on September 22, 2009, Vanity and her boyfriend, Calvin Lynn, awoke to find defendant in Vanity's bedroom pointing a handgun at them. Defendant kicked Lynn in the face several times, grabbed Vanity by the neck and struck her in the face with the gun. She felt severe pain in her eye and felt blood coming down her face. Defendant pointed the gun at Lynn and told him to get on the floor. Lynn eventually knelt down. Defendant pulled back the slide on the gun, but was having problems with it. A live bullet fell out of the gun onto the floor. Defendant told Lynn, "I should kill your ass" and asked "where is your money at?" Lynn said he did not have any money. Defendant told Lynn to leave the apartment, and threatened that there would be "gunplay" if he (defendant) had to come back. Lynn left. Thereafter, defendant left the apartment, taking Lynn's backpack, cell phone, motorcycle helmet and keys.

Vanity was treated at the hospital for injuries to her eye and ear. The eye injury was severe, causing concern about permanent vision loss. A .40–caliber bullet was found on the bedroom floor. After the September 22 incident, Vanity realized the spare house keys she kept on her kitchen counter were missing.

Vanity testified about prior uncharged acts of domestic violence. Defendant choked her in 2003. He slapped her in the mouth and "busted [her] lip" in November or December 2008. He choked her in February 2009. In June 2009, he threw water on her, hit her in the back of the head with his hand, and kicked her. In August 2009, he punched her in the arm.

The parties stipulated that defendant was convicted of a felony offense in February 2003.

The Verdicts

The jury returned verdicts as follows:

Count One—corporal injury on a co-parent: the jury deadlocked, and the count was subsequently dismissed.

Count Two—felony child abuse: the jury found defendant not guilty of felony child abuse, but guilty of the lesser included offense of misdemeanor child abuse.

Count Four—first degree robbery of Lynn: the jury found defendant not guilty of both the charged offense and the lesser included offense of petty theft.

> All other counts and enhancements: the jury found defendant guilty as charged and found true the great bodily injury and firearm use enhancement allegations.

People v. Motley, 2013 WL 736291 at *1-3 (Cal. App. 2013.)

V. <u>Discussion</u>

In claim two, petitioner alleges that the trial court failed to disclose Rainey's alleged pre-trial recantation regarding petitioner's use of a gun in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). In claim three, petitioner alleges that the prosecutor knew that Rainey's trial testimony regarding his use of a gun was false and failed to correct it, in violation of <u>Napue v. Illinois</u>, 360 U.S. 264 (1959). In claim four, petitioner alleges that the state court erred in denying claims two and three. The undersigned does not separately address claim four in these findings and recommendations, as it is construed as further briefing.

A prosecutor has a constitutional obligation to provide exculpatory evidence to the defense, whether substantive or for impeachment purposes, when that evidence is material to the defense and in the possession of the government. <u>Brady</u>, 373 U.S. at 87; <u>Giglio v. United States</u>, 405 U.S. 150, 154-55 (1972). The "mere possibility that undisclosed information might have helped the defense, or might have affected the outcome of the trial, is insufficient to establish materiality" on habeas review. <u>Cooper v. Brown</u>, 510 F.3d 870, 925 (9th Cir. 2007).

A criminal conviction violates due process if it is obtained through testimony that the prosecutor knew to be false. <u>Napue</u>, 360 U.S. at 269-70. To prevail on a <u>Napue</u> claim, a prisoner must demonstrate that: (1) the testimony was actually false; (2) the prosecution knew or should have known that the testimony was actually false; and (3) the false testimony was material. <u>Hein v. Sullivan</u>, 601 F.3d 897, 908 (9th Cir. 2010).

In claims two and three petitioner alleges that, at trial, Rainey testified that petitioner used a gun against both her and victim Lynn. Petitioner alleges that on November 19, 2013, he received a declaration from Rainey stating that she committed perjury when she testified that petitioner had a gun when he committed the crimes. A copy of this letter is attached to the petition. (<u>See</u> ECF No. 1 at 59-62.) In this letter, Rainey also stated that she told the prosecutor before taking the stand that petitioner never possessed a gun. Rainey claimed that the prosecutor

8

told her, "It's okay. Just stick to the report." Rainey also claimed that she asked the prosecutor if she could take her anxiety medication before testifying. The prosecutor told her, "Yes…just don't tell the defense attorney. If she asks, say no."

On January 6, 2014, petitioner filed a habeas corpus petition in the Sacramento County Superior Court raising the Brady and Napue claims raised in the instant petition. (Respondent's Lodged Document 5.) Petitioner attached the Rainey declaration on which these claims are based to this petition. (Id.) On November 14, 2014, and January 23, 2015, the Superior Court held an evidentiary hearing regarding these claims. (See ECF Nos. 44-1, 44-2 (transcripts from the evidentiary hearing).) Vanity Rainey, Rainey's daughter Hailey, Sacramento Police Officer Her, Deputy District Attorney Carlton Davis, Mimi Molinare-Fade and Calvin Lynn testified. Counsel represented petitioner at the evidentiary hearing.

Following the evidentiary hearing, the Superior Court issued a reasoned decision denying the petition. The Superior Court found that Rainey did not recant to the prosecutor and that Rainey's recantation was false. After independently reviewing the transcript from the evidentiary hearing, the undersigned finds that the Superior Court's summary of the testimony from this hearing is accurate and adopts it herein.

1. TESTIMONY

Vanity Rainey testified at the evidentiary hearing that she lied in her preliminary hearing testimony about Petitioner using a gun because she wanted revenge on petitioner for his hurting her. Prior to trial, she felt bad about lying at the preliminary hearing, so she told the prosecutor [Carlton Davis] that Petitioner did not have a gun. According to Rainey, Davis told her to stick to the police report. When she told Davis that she was taking anxiety medication, he told her to deny that she was on medication. They also practiced her testimony and Davis told her to be emotional when he showed her the gun and explain that it brought back bad memories. The victim advocate was not present during this conversation. Rainey lied during her trial testimony about Petitioner's use of a gun. She knew that the gun would increase Petitioner's time in custody. She admitted that she told medical staff that she was hit in the head with a pistol, but did so because her family was there and she had already told her family that Petitioner had a gun.

Hailey Rainey testified that she did not remember the incident. She denied ever telling an officer that her father [Petitioner] ever hit her mother [Vanity Rainey] with a weapon. She refused to believe that she said it because her father is a good man.

9

Sacramento Police Officer Kang Her testified that she took a statement from Hailey Rainey over the phone in September 2009. Hailey said that she heard her mother yelling, so she went into her mother's room. She saw her father hit her mother with a weapon. Her father told her to go back to her room. Her also took a statement from Vanity Rainey, who said that she was hit on the left side of her face with a black handgun, describing it as larger than Her's gun.

Carlton Davis testified that he was the prosecutor at Petitioner's trial, but had not been assigned to the case at the time of the preliminary hearing. He did not meet with victims without the victim's advocate, Mimi Molinare-Fade, who was assigned to work exclusively with Davis on his cases. If a witness ever told him that she had lied, he would have disclosed it to opposing counsel. Rainey never told Davis that Petitioner did not have a gun or that she needed anxiety medication. He never told her to lie or cry while testifying. If a witness did not remember something, he would use the report to refresh her recollection; he would not have said to stick to the report.

Mimi Molinare-Fade testified that she had been a victim advocate [now retired] and worked with Carlton Davis with victims of violent domestic violence cases. She was present during meetings between Vanity Rainey and Davis. Rainey never said that she had lied or was taking medication. Davis never told any victim to lie. Molinare-Fade's office was next to Davis's office; Davis did not meet with Rainey without Molinare-Fade.

Calvin Lynn testified that he spent the night of September 22, 2009 at Vanity Rainey's residence. He woke to a commotion in the dark in which a man and a woman were arguing. The man had something in his hand that Lynn felt was a threat, but Lynn did not see a weapon. He did not recall making a statement to an officer on that day. He denied telling an officer in November 2014 that there was a male standing in Rainey's bedroom with a gun. After hearing an audio of the November 2014 conversation, Lynn testified that he said there was a gun because the officer told him it was in Lynn's original statement.

Respondent's Lodged Document 6 at pp. 2-4.

The Superior Court denied the petition for the reasons stated herein:

### II. BRADY DUTY

The prosecution has the duty to disclose any material exculpatory evidence to the defense. (Penal Code, § 1054.1(e); <u>Brady v. Maryland</u> (1963) 373 U.S. 83.) The failure to disclose <u>Brady</u> evidence is only prejudicial if the evidence was "material" – meaning that there is a reasonable probability of a different result. (<u>People v. Kasim</u> (1997) 56 Cal.App.4th 1360, 1382.)

Petitioner argues that Rainey told Davis that she had lied about the gun, constituting exculpatory evidence that Davis should have disclosed to Petitioner. The Court finds the testimony of Davis and Molinare-Fade to be credible on the issue of whether Rainey ever

disclosed to Davis that she had lied about the gun or that Petitioner never had a gun. Their testimony about their practice of having a victim advocate at all meetings between the prosecutor and the victim and about Molinare-Fade's exclusive assignment to Davis's caseload persuade the Court that Davis did not meet with Rainey outside the presence of Molinare-Fade and that Rainey did not tell Davis that she had lied about the gun. Consequently, Petitioner has not shown that Davis failed to disclose any exculpatory evidence in violation of his Brady duties.

III. FALSE EVIDENCE

A writ of habeas corpus may be based on the grounds that false evidence that is "substantially material or probative on the issue of guilt or punishment was introduced against a person at any hearing or trial relating to his incarceration." (Pen. Code, § 1437(b)(1).) The petitioner must prove, by a preponderance of the evidence, facts showing that he is entitled to relief. (In re Champion (2014) 58 Cal.4th 965, 1007.) Evidence is material if there is a reasonable probability that it could have affected the outcome. Whether evidence is material is determined objectively, based on totality of the circumstances. (In re Pratt (1999) 69 Cal.App.4th 1294, 1313.) In other words, the evidence is material if there is a reasonable probability that had it not been introduced, the result would have been different such that it undermines confidence in the outcome. (In re Sassounian (1995) 9 Cal.4th 535, 546.) The term "reasonable probability" means "a chance great enough, under the totality of the circumstances to undermine our confidence in the outcome." (In re Roberts (2003) 29 Cal.4th 726, 742.)

Rainey's recantation of a vital aspect of her testimony after five years is highly suspicious. (See In re Hall (1981) 30 Cal.3d 408, 418 ["we routinely view recantations with suspicion."].) This is especially true because Rainey's statements and previous testimony were consistently contrary to her current version: immediately after Petitioner assaulted her, Rainey reported to her mother that Petitioner hit Rainey with a gun; Rainey described the gun to the 911 dispatch officer; Rainey told medical staff that she was hit in the head with a gun; she reported to multiple law enforcement officer that she was hit in the head with a gun; she testified at the preliminary hearing that Petitioner hit her in the face with a gun; and she testified at trial that Petitioner hit her in the face with a gun. Although Petitioner attempted to introduce evidence at trial that Rainey admitted to Kevin Brown that she lied in her trial testimony, Brown could only say, "She [Rainey] didn't say specifically I lied and said it was a gun." (RT 394.)

In addition, Rainey's evidentiary hearing testimony did not explain the circumstantial evidence of Petitioner's use of a gun: that bullets were found in Rainey's bedroom the following day, which was consistent with Rainey's previous testimony that Petitioner's gun jammed. Finally, Rainey's explanation for lying for the last five years is unconvincing: she was angry at Petitioner, she was embarrassed about Calvin Lynn not defending her, and she had to "save face." More telling is her 2013 letter to Petitioner, saying that

11

> she could not raise their daughter without Petitioner and asking "what I can do to help your case."
>
> Although Hailey Rainey and Lynn testified that they did not see Petitioner with a gun, both were impeached with their prior statements in which they described Petitioner having a gun. Due to the passage of time and Hailey Rainey's age, her testimony at the evidentiary hearing was not credible. Similarly, due to the passage of time, Lynn's original 2009 statement was more credible.
>
> Under these circumstances, Rainey's recantation does not undermine confidence in Petitioner's conviction. Therefore, Petitioner has not shown by a preponderance of the evidence that false evidence was presented at his trial.

(Id. at 5-7.)

This court is required to defer to the state court's credibility findings made following the evidentiary hearing. See Sophanthavong v. Palmateer, 378 F.3d 859, 867 (9th Cir. 2004) ("[B]ecause the state court conducted an evidentiary hearing…, we are required to defer to the state court's credibility findings."); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas corpus courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state court, but not by them.") Brown v. Poole, 337 F.3d 1155, 1160 n. 2 (9th Cir. 2003) ("We would indeed defer to all factual findings of the state court that are reasonable 'in light of the evidence presented in the state court proceedings.'") (quoting Greene v. Henry, 302 F.3d 1067, 1072 (9th Cir. 2002)).

The Superior Court found credible the testimony of prosecutor Davis and victim advocate Molinare-Fade that Rainey did not recant to the prosecutor prior to trial. The Superior Court also found Rainey's testimony that she lied when she testified that petitioner had a gun not credible. After reviewing the record, the undersigned finds these factual findings to be reasonable. Accordingly, the undersigned defers to these factual finding when addressing the merits of petitioner's claims.

The Superior Court opinion is the last state court to issue a reasoned decision addressing petitioner's Brady claim. (See Respondent's Lodged Documents 8, 9 (summary denials of petitioner's habeas petitions by California Court of Appeal and California Supreme Court.)) Accordingly, the undersigned considers whether the Superior Court's denial of this claim was a

reasonable application of clearly established Supreme Court authority.

The Superior Court found no Brady violation because it found that Rainey did not recant to the prosecutor prior to trial regarding her preliminary hearing testimony that petitioner had a gun. For this reason, no Brady violation occurred. See also Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995) (holding that the prosecution did not violate Brady by failing to provide evidence of which it was unaware.) The undersigned finds that the denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority. Accordingly, petitioner's Brady claim is without merit and should be denied.

Although petitioner raised a Napue claim in the Superior Court petition, the Superior Court did not address this claim in its reasoned decision. Because the Superior Court issued a decision rejecting some of petitioner's claims, but did not expressly address the Napue claim, this court presumes that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. at 293. Because the Superior Court reached a decision on the merits but provided no reasoning to support its conclusion, this court independently reviews the record to determine whether habeas corpus relief is available under 28 U.S.C. § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011).

As discussed above, the undersigned defers to the Superior Court's findings that Rainey's recantation was not credible. Therefore, Rainey's trial testimony that petitioner had a gun was not false. Moreover, nothing in the record demonstrates that the prosecutor should have doubted the credibility of Rainey's trial testimony regarding petitioner's use of a gun. Accordingly, petitioner's Napue claim is without merit. See Hein, 601 F.3d at 908 (to prevail on Napue claim, petitioner must demonstrate that testimony was actually false and that the prosecutor knew or should have know the testimony was false).

After conducting an independent review, the undersigned finds that the Superior Court's denial of petitioner's Napue claim was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

////

////

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 14, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Mot59.fr